1

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------------------x
    UNITED STATES OF AMERICA,
3                   Plaintiff,

4                                        CR 03-304

5           versus              United States Courthouse
                                225 Cadman Plaza East
6                               Brooklyn, N.Y.  11201
    RICHARD MARTINO,
7
                    DEFENDANT.
8
    ------------------------------------------x
9
                                     February 14,  2005
10                                   3:15 p.m.
            TRANSCRIPT OF PLEA
11  Before:  HON. CAROL B. AMON,

12                                   DISTRICT COURT JUDGE

13                          APPEARANCES

    ROSLYNN R. MAUSKOPF
14  United States Attorney - Eastern District of New York
    One Pierrepont Plaza
15  Brooklyn, New York  11201
            ERIC KOMITEE, ESQ.
16          THOMAS FIRESTONE, ESQ.
            TRACY KNUCKLES, ESQ.
17          JEFFREY GOLDBERG, ESQ.
    Assistant United States Attorneys

18

19  ATTORNEY FOR DEFENDANT:

20  GUSTAVE NEWMAN, ESQ.
    BRIAN CESSERATO, ESQ.
21  FOR RICHARD MARTINO
    Court Reporter:  ALLAN R. SHERMAN, CSR, RPR
22                   225 Cadman Plaza East Rm 374
                     Brooklyn, New York  11201
23                   Tel: (718) 260-2529  Fax: (718) 254-7237

24

25  Proceedings recorded by mechanical stenography, transcription
    by CAT.

**PLEA**

2

1          THE COURT:  Are we prepared to proceed?

2          MR. FUTERFAS:  Your Honor, we had a few changes to

3   the Missouri agreement.  I was on the phone with the assistant

4   United States Attorney out there as was Mr. Newman and

5   basically they have agreed to our changes and they were in the

6   process, any minute they should be faxing to your chambers

7   what should be, hopefully will be the final agreement which

8   will be the agreement that the defendants will plead to in the

9   Western District of Missouri.

10          That's where we are.

11          THE COURT:  Is any mention made of those agreements?

12          MR. FUTERFAS:  In this agreement?  Yes, your Honor.

13          THE COURT:  Let me just ask a question with respect

14   to Mr. Martino's plea.

15          The superseding --

16          MR. NEWMAN:  Richard?

17          THE COURT:  Yes, Richard, I'm sorry.

18          The superseding information that Richard Martino is

19   pleading guilty to covers both pending indictments, is that

20   right.

21          MR. NEWMAN:  Yes, your Honor.

22          MR. KOMITEE:  Yes, your Honor.

23          THE COURT:  This waiver of indictment has the docket

24   number of the S-6 on it, correct?

25          MR. KOMITEE:  Correct.

PLEA

1      THE COURT:  Should it also have the other docket

2  number on it.

3      MR. FIRESTONE:  I believe I should, your Honor.  The

4  other Indictment Number is 05 CR 0021.

5      THE COURT:  I suppose -- what remains to be decided

6  about the agreement in Missouri?

7      MR. NEWMAN:  Just a forfeiture provision, the

8  language in the forfeiture provision in the Missouri

9  indictment, your Honor, and the reason it's significant

10  vis-a-vis this case is there is a total forfeiture in this

11  case of $15 million of which as far as my client is concerned

12  and in connection with that $15,000,000. 5 million

13  400 thousand of it is going to Missouri.

14      THE COURT:  Is this just in this -- in this plea

15  agreement, it says 9,000,000.

16      MR. KOMITEE:  Right, we reduced the amount to

17  reflect the corresponding increase in Kansas City.

18      THE COURT:  Way is the reference in your agreement

19  to the Kansas City agreement?

20      MR. KOMITEE:  I don't believe there is any such

21  reference.

22      THE COURT:  I thought it was referenced in the

23  agreement.

24      MR. KOMITEE:  We indicate in the appeal waiver on

25  page 4 that the appeal waiver is conditioned upon the sentence

1    being 120 months or less and being ordered to run concurrently

2    to any sentence imposed in the Western District of Missouri,

3    if that is the case.

4            THE COURT:  So is it envisioned that he is going to

5    enter a plea in the Western District in Missouri to --

6            MR. NEWMAN:  Yes, your Honor.  We are trying to

7    arrange it for next week.

8            THE COURT:  Is the same thing true with regard to

9    Daniel?

10           MR. NEWMAN:  Yes.

11           MR. FISCHETTI:  It's our present intention to plead

12   guilty as quickly as we can, both Martinos, in Kansas City, be

13   sentenced in Kansas City, then come back here to be sentenced.

14           MR. NEWMAN:  Your Honor, just to save sometime, may

15   I have a minute to speak to Mr. Fischetti and our respective

16   clients together and see if we can save some time?

17           THE COURT:  Yes.

18           MR. NEWMAN:  Your Honor, I think it's our consensus

19   respectively, we have had a very professional relationship

20   with the assistant in Missouri, the language that we have in

21   the forfeiture agreement, he has agreed to it.  I don't

22   believe that he is going to do anything to disturb that

23   agreement and I believe that ultimately, while we are in the

24   process of taking a plea, so we don't delay you and everybody

25   else, those pages will come here and they will meet the needs

1  that we have.

2              And what I'm saying to you in a roundabout fashion,

3  I think that we can proceed with our pleas, your Honor.  I

4  don't think that anything that is going to happen in that

5  situation is going to in any way disturb this situation.  I

6  have that confidence in that prosecutor in Kansas City and in

7  my colleagues to my right.

8              MS. KNUCKLES:  Can I have a moment, your Honor?

9              I apologize.  Can I speak to you for just one

10  moment?

11              MR. NEWMAN:  Sure.

12              (Pause.)

13              THE COURT:  Okay, are we ready to proceed?

14              MR. NEWMAN:  Yes, we are.

15              MS. KNUCKLES:  Yes, we are.

16              THE COURT:  So you have an application, Mr. Newman,

17  that your client I take it waives indictment and pleads guilty

18  to the superseding information before the court?

19              MR. NEWMAN:  He does, your Honor.

20              THE COURT:  Mr. Martino, I'm advised by your counsel

21  that you wish to waive indictment, permit the government to

22  file a superseding information before the Court and then you

23  in turn want to plead guilty to that.

24              This is a serious decision.  I have to make sure

25  that you understand all of your rights and the consequences of

6

PLEA

1   your plea and your waiver.  I'll have to ask you questions and

2   that will require that your answers to my questions will be

3   made under oath so my courtroom deputy will swear you in.

4           (Defendant sworn.)

5           THE COURT:  First matter we need to take up, Mr.

6   Martino, is waiver of indictment.

7           The government has put before the Court a

8   superseding information as I understand it that contains two

9   conspiracy charges as well it contains a fraud conspiracy,

10  wire fraud and mail fraud conspiracy as well as an extortion

11  conspiracy in two counts and it in addition has a forfeiture

12  allegation.

13          Have you read over the charges in the superseding

14  information?

15          THE DEFENDANT:  Yes, I have, your Honor.

16          THE COURT:  And you have discussed them with

17  counsel?

18          THE DEFENDANT:  Yes, I have.

19          THE COURT:  The first charge as I understand it says

20  that between '96 and '02 the defendant Richard Martino with

21  others conspired to devise a scheme and artifice to defraud.

22  It then proceeds to discuss two different schemes, one,

23  defrauding users of 800 telephone numbers in what has been

24  referred to as the cramming scheme that is defined in the

25  superseding information as well as defrauding visitors to

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

PLEA

1   websites for the purposes of obtaining money and property from

2   the users and visitors by means of materially false,

3   fraudulent pretenses, representations and promises and that

4   for the purpose of executing those schemes, to place and

5   caused to be placed in post offices mail to be delivered by

6   the post office and then also transmitting and causing to be

7   transmitted by means of wire communication, signs and signals.

8           It also alleges a series of overt acts in

9   furtherance of that conspiracy.

10          Count two is a separate charge, another conspiracy

11  but a very different conspiracy.  This one alleges that the

12  defendant Richard Martino, with others, knowingly and

13  intentionally conspired to obstruct, delay and affect commerce

14  and the movement of articles and commodities in commerce by

15  extortion in that Richard Martino and his coconspirators

16  agreed to obtain property to wit money from Northern and

17  Shelly, a U.S. and United Kingdom publishing business with the

18  consent of the owners which consent was induced by the

19  wrongful use of actual and threatened force.  And then it

20  alleges overt acts in furtherance of that conspiracy.

21          Now, as I said, it also contains a forfeiture

22  allegation.

23          This information charges two very serious felonies,

24  plus a forfeiture count.  The government cannot come to court

25  and simply file a charge like this unless you agree to it.

1  When I say serious, too, I should mention the penalties to

2  you.  It's five years on each count, which means you face a

3  potential of 10 because the Court can run it consecutively,

4  three years of supervised release, which if invoked, you could

5  go back to jail for two years, a 250,000-dollar fine or the

6  greater of twice the gross gain or loss, which we, I think,

7  summarized as $150 million, is that right?

8             MR. KOMITEE:  Yes, your Honor.

9             THE COURT:  Restitution, which would be also a

10  significant amount in the nature of 75,000,000 perhaps, that

11  high?

12             MR. KOMITEE:  Yes, your Honor.

13             THE COURT:  A hundred dollar special assessment and

14  then pursuant to your agreement, $9 million in forfeiture.

15             MS. KNUCKLES:  Point of clarification, if I may

16  your Honor.  The forfeiture for Richard Martino is now going

17  to be $9.1 million and we will make the appropriate change in

18  the agreement with initials.

19             MR. NEWMAN:  No objection.

20             THE COURT:  Do you understand that has been a

21  change, 9.1 million?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  So as I said, this is a very serious

24  charge.  The government can't come to court and just file it

25  unless you agree to it.  Otherwise, you would have a right to

PLEA

1    have the evidence presented to a Grand Jury and have a Grand

2    Jury determine whether or not the charges would be brought.

3    The government would have to persuade a majority of the

4    members of the Grand Jury that there was probable cause to

5    believe that you committed the 2 offenses.

6            If the Grand Jury found probable cause, they would

7    return the charge in the form of what is called an indictment.

8    If not, no charges would be brought.  So when you waive

9    indictment, you give up the right to have the Grand Jury make

10   the determination and you say it's okay with me that the

11   government has come and filed a charge.

12           Do you understand that is what waiving indictment

13   means?

14           THE DEFENDANT:  Yes, I do.

15           THE COURT:  Do you in fact wish to waive indictment?

16           THE DEFENDANT:  Yes, I do.

17           THE COURT:  Anyone threatened or force you to waive

18   indictment?

19           THE DEFENDANT:  No.

20           THE COURT:  I accept the waiver and I will sign it.

21           Now as I said, I'm going to have to ask you a series

22   of question now that I understand that you want to enter a

23   guilty plea to this.

24           First of all, some background questions.

25           How old are you?

10

PLEA

1          THE DEFENDANT:  45.

2          THE COURT:  How far in school did you go?

3          THE DEFENDANT:  12th grade.

4          THE COURT:  Are you presently, have you recently

5    been under the care of a doctor, including a psychiatrist for

6    in I reason?

7          THE DEFENDANT:  No.

8          THE COURT:  This the past 24 hours, have you taken

9    any pills, drugs, medicine or alcohol of any kind?

10         THE DEFENDANT:  No.

11         THE COURT:  Is your mind clear as you stand here

12   today?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Mr. Newman, have you discussed the

15   question of a guilty plea with your client?

16         MR.NEWMAN:  Yes, I have your Honor.

17         THE COURT:  In your view, does he understand the

18   rights he is waiving by pleading guilty?

19         MR. NEWMAN:  In my view, he does.

20         THE COURT:  Do you have any question as all about

21   his competency to proceed today?

22         MR. NEWMAN:  None at all.

23         THE COURT:  Mr. Martino, have you had enough time to

24   discuss with your attorney the decision to enter a guilty plea

25   in this case?

PLEA

1        THE DEFENDANT:  Yes, I have.

2        THE COURT:  Are you satisfied to have him represent

3    you?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Now, I summarized the charges a moment

6    ago.  Let me ask you have you carefully read this superseding

7    information including the introduction as well as the

8    substantive counts?

9        THE DEFENDANT:  Yes, I have.

10       THE COURT:  Do you believe you understand the

11    charges?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Have you had a conversation with Mr.

14    Newman where he went over what the government would have to

15    prove and by proof beyond a reasonable doubt with respect to

16    the charges?

17       THE DEFENDANT:  Yes.

18       THE COURT:  The first count in this indictment

19    charges mail and wire fraud conspiracies.

20            In order for the government to prove a conspiracy,

21    they have to prove a whole series of elements.  They have to

22    prove that two or more persons entered into the unlawful

23    agreement to commit offense against the United States as

24    charged in the indictment, and in this case it means the mail

25    and wire fraud conspiracy.  They would have to prove that you

PLEA

1   knowingly and intentionally became a member of that

2   conspiracy.  They would have to prove that one of the members

3   of the conspiracy committed knowingly at least one of the

4   overt acts charged in the indictment.  And fourth, they would

5   have to prove that the overt acts were committed to further

6   some objective of the conspiracy.

7                Do you understand that?

8                THE DEFENDANT:  Yes, I do.

9                THE COURT:  Now, the conspiracy alleged is an

10  agreement to commit a certain offense.  And in this case it's

11  male and wire fraud.  And I just wanted to then tell you what

12  the elements of mail and wire fraud are.

13                First of all, there must be a scheme or artifice to

14  defraud, to obtain money or property by false and fraudulent

15  pretenses; second, the government must prove the defendant

16  knowingly and willfully participated in the scheme to defraud

17  with knowledge of its fraudulent nature and specific intent to

18  defraud; third, the mail fraud, the government must prove that

19  in execution or in furtherance of the scheme, the use of mails

20  occurred as specified in the information.  And for wire fraud

21  it must be established that the use of interstate or foreign

22  wires occurred in furtherance of the scheme.

23                Do you understand the elements of mail and wire

24  fraud?

25                THE DEFENDANT:  Yes, I do, your Honor.

1           THE COURT:  As I understand, there are essentially

2  here two schemes that are charged in count one, is that

3  correct, two different schemes?

4           MR. FIRESTONE:  Yes, your Honor.

5           THE COURT:  And one is outlined in the introduction,

6  which is referred to as a cramming scheme.  And as I

7  understand that scheme, there were advertisements for 800

8  numbers for adult entertainment services, the scheme was that

9  people would call the 800 number, there wouldn't be any free

10  entertainment services advertised.  Instead, what would happen

11  when they called the phone is their phone bills would

12  automatically be charged with incurring monthly charges for a

13  voice mail service that they hadn't intended to order.

14           The scheme was able to function by the use of

15  marketing materials, that's what the consumers saw but

16  different approval materials which were shown to the

17  regulators and to the telephone companies.  The scheme was

18  also perpetrated by a use of a company USP&C which was

19  referred to as a building aggregator and would cause the

20  charges to be put on the bills and delivered to the telephone

21  companies who sent the bills to individuals.  It was also

22  perpetrated, the fraud, through the use of shell companies

23  that were purported service providers, the people who were

24  allegedly offering the voice mail and other services that in

25  fact had not been ordered.

PLEA                                                    14

1          So do you understand that first scheme that is

2     alleged?

3               THE DEFENDANT:  Yes, I do.

4               THE COURT:  Have I correctly summarized the first

5     scheme?

6               MR. KOMITEE:  You have.

7          One thing that I would clarify, in this case the

8     government doesn't allege that the voice mail charges were

9     generated automatically simply as a function of the call being

10    completed.  It was only after a person was induced to give

11    their name and some other identifying information or speak a

12    phrase that led to the victim being billed.  But it is our

13    contention that whatever the victim indicated on the so-called

14    voice capture, it was intended that they would be billed for

15    having left a voice capture irrespective of whether they knew,

16    consented or authorized to the charges being levied.

17              MR. NEWMAN:  Your Honor, may I just interrupt?

18              THE COURT:  Yes.

19              MR. NEWMAN:  Your Honor, it had been my

20    understanding, I believe the government's understanding, Mr.

21    Martino, since this is a two -- a conspiracy which covers two

22    particular schemes.  Mr. Martino is going to plead guilty to

23    the internet scheme.

24              MR. KOMITEE:  Which is fine with the government,

25    your Honor.

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

**PLEA**

1        THE COURT:  I just assumed since it was a

2   superseding information.

3        MR. NEWMAN:  You were on a roll so to speak and I

4   didn't want to interrupt you in the middle of your statement.

5        THE COURT:  The second scheme that is alleged there,

6   Mr. Martino, is what has been referred to in the many

7   discussions and arguments that we have had in this case is the

8   internet scheme, and the government alleges that people were

9   defrauded into thinking they were getting a free tour of the

10  internet, whereas in fact they were being billed for it.  And

11  the government alleges that scheme initially took place by

12  saying to the people that you have to put in your credit card

13  number to prove you were over 18 and they thought that that

14  was just for that purpose.  They watched it and it came a

15  point in time where they were charged without their

16  understanding that they were going to be charged.  So that is

17  the scheme that is outlined there.

18        Do you understand that.

19        THE DEFENDANT:  Yes, I do.

20        THE COURT:  Now, the second charge is the, what is

21  referred to as the Hobbs Act charge and again, this is a

22  conspiracy so the same elements of conspiracy that I mentioned

23  to you a moment ago would have to be proven, except this time

24  the offense is not mail fraud or wire fraud, but a Hobbs Act.

25        So the individual elements of a Hobbs Act are that

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

1    the government would have to prove that a defendant wrongfully

2    obtained property of another, that the defendant obtained the

3    property with the victim's consent but that the consent was

4    compelled by the wrongful use or threat of force, violence or

5    fear; and third, that as a result of the defendant's action,

6    interstate commerce or an item moving in interstate commerce

7    was delayed, obstructed or affected in some way.

8                So do you understand the crime charged in count two?

9                THE DEFENDANT:  Yes.

10               THE COURT:  What I want to do now is go over the

11   rights that you have.  These are rights that you give up if

12   you plead guilty.

13               First of all, you have a right to plead not guilty

14   to these charges.

15               Do you understand?

16               THE DEFENDANT:  Yes.

17               THE COURT:  If you plead not guilty to the charges,

18   you would have a right under the Constitution and laws of the

19   United States to a speedy and public trial before a jury with

20   the assistance of your attorney.

21               Do you understand that?

22               THE DEFENDANT:  Yes, I do.

23               THE COURT:  At any trial you would be presumed

24   innocent.  You wouldn't have to prove that you were innocent.

25   Under our system of law, it is the government that has the

PLEA                                                    17

1   burden of proof and that is proof beyond a reasonable doubt

2   that you are guilty of the crime charged.  If the government

3   failed to meet that burden of proof, the jury would have the

4   duty to find you not guilty.

5           Do you understand?

6           THE DEFENDANT:  Yes.

7           THE COURT:  In the course of the trial, witnesses

8   for the government have to come here into court and testify in

9   your presence.  Your lawyer would have the right to

10  cross-examine these witnesses.  He could raise legal

11  objections to evidence the government sought to offer against

12  you and could offer evidence in your behalf.

13          Do you understand?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  At trial, you would have a right to

16  testify in your on behalf if you wanted to.  On the other

17  hand, you couldn't be forced to be a witness at your trial.

18  This is because under the Constitution and laws of the United

19  States, no person can be made to be a witness against himself.

20  So if you wanted to go to trial but you chose not to testify,

21  I would tell the jury they could not hold that against you.

22          Do you understand?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  If instead of going to trial, you plead

25  guilty to the crimes charges and if I accept your guilty plea,

PLEA                                                              18

1  you'll be giving up your right to a trial and all the other

2  rights I just discussed.  There will be no trial in this case

3  and no right to an appeal on the question of whether you did

4  or did not commit the crime.  I'll simply enter a judgment of

5  guilty based upon your plea.

6          Do you understand?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  If you do plead guilty, I'm going to

9  have to ask you questions about what you did in order to

10 satisfy myself that you are guilty of this charge.  You are

11 going to have to answer my questions and acknowledge your

12 guilt.  This means you would be giving up your right not to

13 incriminate yourself.

14         Do you understand?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  Are you willing to give up your right to

17 trial and the other rights I just discussed?

18             THE DEFENDANT:  Yes, I am.

19             THE COURT:  I have before me a plea agreement.  This

20 one is marked Government's Exhibit 5.

21             Mr. Martino, is that your signature on the plea

22 agreement?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Does the government represent on behalf

25 of the U.S. Attorney's Office for the Eastern District that

PLEA                                              19

1    the plea agreement before the Court contains the entirety of

2    any understanding that your office has reached with this

3    defendant?

4              MR. KOMITEE:  We do, your Honor.

5              THE COURT:  And the only thing that is different is

6    at paragraph 1 G, instead of 9,000,000, it should be

7    9.1 million?

8              MR. KOMITEE:  I think that may carry through to

9    paragraph 5 as well.

10             THE COURT:  5?

11             MR. KOMITEE:  Yes, in paragraph 5,

12   the 9 million-dollar figure appears twice about halfway down

13   the paragraph, then a third time on the carryover section on

14   page 6.

15             MR. NEWMAN:  Your Honor, even though we have not

16   agreed to the government's calculations of the points so to

17   speak that they propose, I think that there is an error.  It

18   looks to me like a typo and that is on the count two, the

19   extortion conspiracy count.  I believe that the last entry

20   plus preparation under 2B(3)(B)(ii), it should be three points

21   not four points.

22             MR. FIRESTONE:  That is correct, and we corrected it

23   on Mr. Newman's copy.  That leaves a base offense level --

24   adjusted offense level for that offense 27.  It doesn't change

25   the overall.

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

PLEA                                                  20

1        MR. NEWMAN:  I have no quarrel with my friend to the

2   right except Mr. Newman corrected it on my copy.  That is my

3   handwriting.

4        MR. FIRESTONE:  All right.

5        MR. NEWMAN:  It doesn't affect any of those

6   calculations but it just makes that total 27.

7        MR. FIRESTONE:  That is correct, your Honor.  It

8   should be three points instead of four points.

9        THE COURT:  But otherwise, the government represents

10  that this agreement is the entirety of any understanding your

11  office has reached with Mr. Martino in this matter?

12        MR. KOMITEE:  We do your Honor.

13        THE COURT:  Is this your understanding as well Mr.

14  Newman?

15        MR. NEWMAN:  Yes, it is.

16        THE COURT:  Mr. Martino, did you read over this plea

17  agreement carefully.

18        THE DEFENDANT:  Yes, I did.

19        THE COURT:  Did you discuss it with your attorney?

20        THE DEFENDANT:  Yes, I did.

21        THE COURT:  Do you believe that you understand the

22  provisions in this plea agreement?

23        THE DEFENDANT:  Yes, I do.

24        THE COURT:  Is there anything in this plea agreement

25  that is not clear that you need explained in any further

PLEA                                          21

1   detail now?

2           THE DEFENDANT:  No, I don't.

3           THE COURT:  Let me just bring to your attention a

4   couple of aspects of the agreement.

5           Paragraph 4 is correct, right --

6           So it is correct that the defendant agrees not to

7   file AN appeal or otherwise challenge the conviction or

8   sentence in the event that a Court imposes a prison term of 10

9   years or below.  That is in your agreement, Mr. Martino and

10  let me just explain to you quite clearly what that means.

11          If you enter a guilty plea today and you admit the

12  criminal conduct alleged in the criminal charges and if I

13  accept that, you have admitted your guilt, you can't appeal to

14  a higher court on whether you committed the crime or not.

15  That is over by your plea.

16          Do you understand that?

17          THE DEFENDANT:  Yes, I do.

18          MR. KOMITEE:  The appeal waiver works slightly

19  different in this agreement and in Mr. Daniel Martino's

20  agreement in the sense that its conditioned on a sentence

21  being imposed by this Court of 120 months or less and on this

22  Court's determination that that sentence should run

23  concurrently with any sentence in the Western District of

24  Missouri if there is a prior sentencing in the Western

25  District of Missouri.

**PLEA**

1    So both of those criteria would need to be satisfied

2  for the appeal waiver to be effective.

3    THE COURT:  What if he is sentenced here first?

4    MR. KOMITEE:  Then your Honor would not make a

5  determination as to whether the sentence was concurrent or

6  consecutive and the appeal waiver would be effective.

7    THE COURT:  As I understand it, Mr. Martino, as long

8  as this Court does two things, you can't appeal my sentence to

9  a higher court, one of which is that I don't give you a

10  sentence greater than 120 months, which I couldn't do anyway

11  because that is the maximum penalty by law under both counts.

12    MR. KOMITEE:  Yes, your Honor.

13    THE COURT:  And run your sentence concurrently with

14  whatever sentence you get in the Western District of Missouri.

15  So if I gave you a sentence 120 months or less and if I run

16  that sentence concurrently with whatever the judge in Missouri

17  decides to give you, then you can't appeal my sentence to a

18  higher court.

19    Do you understand that?

20    THE DEFENDANT:  Yes, I do.

21    THE COURT:  Anyone threaten or force you to give up

22  that appellate right that you have?

23    THE DEFENDANT:  No.

24    THE COURT:  I guess I don't understand this.

25  Assuming that I gave Mr. Martino 120 months but there was

PLEA                                                    23

1   nothing to run it concurrent to, does he waive his right to

2   appeal or still retain his right to appeal?

3            MR. KOMITEE:  The Court raises an excellent

4   question.  I think when we drafted this agreement, it was the

5   collective understanding of the parties that Mr. Martino would

6   most likely seek to be sentenced in the Western District of

7   Missouri first and I think that assumption no longer holds

8   true.

9            MR. NEWMAN:  I am sorry.  I didn't update our

10  colleague.  That plan does hold true.  We do propose to go out

11  to Missouri and get sentenced first and then come back here

12  and be sentenced, which will relieve your Honor of the burden

13  while your Honor, respectfully, on the hypothetical that you

14  gave, assuming that you gave 120 months, you would say it runs

15  concurrent with the sentence of four years or whatever he got

16  in Missouri.  That would abrogate Mr. Martino's right under

17  this agreement to appeal.

18           THE COURT:  To appeal.

19           MR. NEWMAN:  Yes, ma'am.

20           THE COURT:  But if for some reason the judge there

21  decides that the judge doesn't want to do that and wants to

22  see what happens here first, anything -- the judge there isn't

23  bound to sentence him first, whoever the judge is.

24           Assuming the scenario that for whatever reason, I

25  end up sentencing him first, is there no appeal waiver?

PLEA                                                        24

1    MR. NEWMAN:  I would believe, your Honor, if

2    your Honor were to sentence him first and say -- this is my

3    off the cuff opinion, your Honor would say --

4    THE COURT:  Recommend.

5    MR. NEWMAN:  Recommend that the sentence that I'm

6    now imposing is to run concurrent with any sentence that is

7    imposed in Missouri, I think that would abrogate his rights to

8    appeal.

9    That is my opinion off the cuff without doing any

10   research.

11   MR. KOMITEE:  That is satisfactory to the government

12   and I think that we should ask that that understanding be made

13   part of this agreement.

14   THE COURT:  Do you understand that, Mr. Martino?

15   MR. NEWMAN:  May I have a minute to speak with him?

16   THE COURT:  Yes.

17   (Pause.)

18   THE COURT:  Do you understand that?

19   THE DEFENDANT:  Yes, I do.

20   THE COURT:  I want you to understand something as

21   well, because I know just in phrasing it, your counsel, I

22   heard him make reference to my responsibilities under this

23   agreement.

24   I don't really have any responsibilities under this

25   agreement at all.  I don't have to recommend that anything run

1   concurrent or not concurrent.  I can could recommend that it

2   run consecutive.  The result of my making a recommendation

3   like that would be that you wouldn't waive your right to

4   appeal but I'm not bound by anything in this agreement myself

5   as the judge?

6           MR. NEWMAN:  Forgive me for poor choice of words.

7           THE COURT:  I just wanted to make sure that he

8   understood that.

9           Do you understand it?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Also, this is an unusual agreement to

12  some extent because it's what they refer to as a global plea

13  agreement.  The government says in paragraph 21 that their

14  willingness to agree that you plead guilty to the superseding

15  information as opposed to the charges in the underlying

16  indictment is based on everybody in the case entering a plea.

17          If someone does not enter a plea, then the

18  government doesn't have to stand by this agreement and they

19  can come in and ask to vacate the plea and put you back at

20  stage one where you were before.  That is the way this

21  agreement reads.

22          Do you understand that?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  However, you can't back out of the plea.

25  If they decide for instance, well, somebody didn't plead but

PLEA                                                         26

1   that is okay, we're still satisfied to have Mr. Martino plead

2   to these charges under that agreement, if somebody else

3   doesn't plead, that doesn't permit you to back out of this.

4           Do you understand that?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  Are there any other parts of this

7   agreement that are unusual that I should bring to his

8   attention?

9           MR. KOMITEE:  I don't believe so, your Honor, but

10  let me take a quick glance through.

11          (Pause.)

12          MR. KOMITEE:  No, your Honor I think that is all

13  that you brought to the defendant's specific attention.

14          THE COURT:  Has the government made you a promise

15  that you believe they have made a promise to you that they

16  didn't put in this agreement?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  Let me -- I mentioned it before when we

19  were talking about waiving indictment but I want to now

20  carefully go over with you what the maximum penalty is.  The

21  maximum prison term on each count is five years once again

22  because the Court can sentence consecutively.  That means you

23  face a maximum exposure of 10 years on the pleas to these

24  charges.

25          Do you understand that?

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

1          THE DEFENDANT: Yes, I do.

2          THE COURT: There are fines here. We've been over

3    this before, but the fine is $250,000 or twice the gain or

4    loss resulting from the offense, whichever is greater. So

5    it's the greater and the government I think estimates we said

6    150,000,000?

7          MR. KOMITEE: Yes, your Honor.

8          THE COURT: That would be somewhere in the

9    neighborhood of the maximum fine the Court could impose. The

10   Court is required to impose a restitution. If there is a

11   restitution figure that I can set within the law, I have to

12   impose restitution and the government estimates that the

13   restitution figure may be somewhere in the nature of

14   $75 million.

15          Do you understand that.

16          THE DEFENDANT: Yes.

17          THE COURT: There are also other penalties, as I

18   mentioned before. There is a forfeiture provision attached to

19   the superseding information and I think as I mentioned to you

20   before, if I didn't, you would have a right to jury trial on

21   this forfeiture allegation as well.

22          Do you understand that?

23          THE DEFENDANT: Yes, I do.

24          THE COURT: There has been an agreed upon amount of

25   forfeiture here of $9.1 million, so that's what the government

PLEA                                28

1    says is the appropriate amount of forfeiture and you and your

2    counsel agree to that and your plea agreement is very detailed

3    as to how that is going to be paid.

4              Do you understand that?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Now, there has been a discussion of

7    sentencing guidelines.  In sentencing, the Court has to take

8    into account what the Sentencing Guidelines would recommend as

9    the appropriate sentence here.

10             Have you discussed sentencing guidelines with Mr.

11   Newman and how those guidelines are calculated?

12             THE DEFENDANT:  Yes, I have.

13             THE COURT:  The government estimates here that the

14   guidelines in this case, and I'm sure this is a factor of the

15   amount of money that they allege the fraud involved, that the

16   guidelines are so high, 121 to 151 months that they actually

17   exceed the statutory maximum.

18             Since I can't give you more than 10 years because

19   you are only pleading guilty to two five year counts, that

20   means that the guideline range would be in effect the 10 year

21   sentence as the government estimates the guideline range.

22             Do you understand that?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Now, this guideline range that they

25   estimate which exceeds the mandatory penalty of 121 to 151

PLEA                                                                    29

1    months, again, you have to understand that that is just an

2    estimate of the guideline range.  I can't tell you for certain

3    what the guideline range will be on the date of sentence

4    because it's my responsibility to make that determination and

5    I don't have enough information now to make it.

6              I won't have that until a presentence report is done

7    which will tell me about a or recommend the guideline range.

8    And if your counsel thinks it's wrong or the government thinks

9    it's wrong, all that can be raised at sentencing, but that's

10   when that determination will be finally made.

11             Do you understand that?

12             THE DEFENDANT:  Yes, I do.

13             MR. NEWMAN:  I want to make one observation if I

14   might.

15             THE COURT:  Yes.

16             MR. NEWMAN:  I know your Honor is keenly aware of it

17   but we have not agreed with this determination.  This is the

18   estimate just by the government, your Honor.

19             THE COURT:  All right.

20             Again, assuming that your -- as I've said about the

21   guidelines, they are advisory now.  I'm not mandated to follow

22   them now as I was in the past, but they are a very important

23   consideration.  They remain a very important consideration in

24   sentencing.

25             Do you understand that?

PLEA                                                          30

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Under the guidelines sentencing system,

3    there is no parole board or Parole Commission.  What that

4    means practically is whatever sentence you do receive from the

5    Court will be pretty close to the actual amount of time you

6    spent in prison.  You don't have the opportunity to appeal to

7    a parole board to get out early because there are no parole

8    boards in the federal sentencing system.

9              Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Finally, if you enter a guilty plea

12   today, your guilty plea will stand.  You can't come back to

13   court at the time of sentence and tell me now you have changed

14   your mind you want to go to trial.  At that point it's too

15   late.

16             Do you understand that?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  Do you have any questions then that you

19   want to ask me about the charge, your rights or anything else

20   related to this matter that might not be clear?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  Mr. Newman, is there anything that you

23   want me to discuss in any further detail with your client?

24             MR. NEWMAN:  There is nothing, your Honor.

25             May I just make another observation.  It's not of

PLEA                                                    31

1   any moment but I think the record should be clear in one

2   respect.   Insofar as the superseding information is concerned,

3   under count two, the various acts that are pled there,

4   influenced by the wrongful use of actual, et cetera,

5   threatened force, violence, it's pled in the conjunctive.

6   Actually, the statute doesn't read that way.  The statute

7   reads in the disjunctive for, and for pleading convenience,

8   the Eastern District pled it that way.  But I just want the

9   record to be clear and I think it will become apparent to

10  your Honor why I make this distinction when Mr. Martino is

11  allowed to allocute as to what he did.

12          THE COURT:  Do you know any reason why your client

13  should not enter pleas of guilty to these two charges?

14          MR. NEWMAN:  No.

15          THE COURT:  Are you ready to plead?

16          THE DEFENDANT:  Yes.

17          THE COURT:  How do you plead to count one in the

18  superseding information, guilty or not guilty?

19          THE DEFENDANT:  Guilty.

20          THE COURT:  How do you plead to count two in the

21  superseding information, plead or not guilty?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  Are you making these pleas of guilty

24  voluntarily and of our own free will?

25          THE DEFENDANT:  Yes, your Honor.

PLEA

1      THE COURT:  Has anyone threatened forced or
2  pressured you to plead guilty?

3      THE DEFENDANT:  No, your Honor.

4      THE COURT:  I understand that this is a global plea
5  which is -- everyone's plea is being excepted as conditioned
6  on everyone pleading guilty.

7      Has any defendant put any pressure on you or undue
8  pressure on you to cause you to plead guilty?

9      THE DEFENDANT:  No, your Honor.

10      THE COURT:  Other than the plea agreement with the
11  government and the agreement that you are reaching with the
12  Western District of Missouri, has anyone made promises to you
13  that have caused you to plead guilty?

14      THE DEFENDANT:  No, your Honor.

15      THE COURT:  Has anyone promised you what sentence
16  you would receive from this Court?

17      THE DEFENDANT:  No, your Honor.

18      THE COURT:  Let's take the first count one first.

19      Do you want to tell me in your own words what you
20  did in connection with count one?

21      THE DEFENDANT:  From 1996 to 2000, I conspired with
22  others to use the mails and wires to defraud internet
23  considers by charging them monthly recurring fees for services
24  they did not knowingly authorize through the use of free
25  tours.

PLEA                                        33

1          In furtherance of this agreement, I caused credit

2    card bills to be sent to consumers located in the Eastern

3    District of New York to be charged unauthorized monthly

4    recurring fees.

5          THE COURT:  Is there one of the overt acts that

6    should be allocuted to specifically?

7          Has he allocuted to E?

8          MR. KOMITEE:  He certainly has in the global sense

9    that he understands that there are telephone bills transmitted

10   -- E is the telephone bill and I think what we are talking

11   about are monthly credit card bills.

12         THE COURT:  That's right.

13         Is there a J?

14         MR. NEWMAN:  G, your Honor.

15         On or about March 10, 1999, Richard Martino

16   transmitted and caused to be transmitted the joint venture web

17   site YGAL.COM by means of wire communication from Lexitrans

18   Service in Kansas to a computer located in Freeport, New York.

19         THE COURT:  Did you do that, Mr. Martino, what Mr.

20   Newman just read?

21         THE DEFENDANT:  Yes.

22         THE COURT:  How was that in furtherance in the

23   scheme?

24         THE DEFENDANT:  Because that URL had the free tours

25   on it that made the people put their credit card in to be

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

1    billed unauthorized.

2              THE COURT:  So was that sent there for the purposes

3    of putting it up on the internet, is that why it was sent to's

4    Lexitrans?

5              THE DEFENDANT:  Yes.

6              THE COURT:  So this could put it up on the internet?

7              THE DEFENDANT:  Yes.

8              THE COURT:  An that was one of the fraudulent free

9    tour sites?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  So you sent that out, caused that to be

12   transmitted by wire communication then in March 10, 1999 from

13   Lexitrans Service in Kansas to a computer in Freeport?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Does the government think that I need a

16   further allocution with respect to count one?

17             MR. KOMITEE:  No, your Honor, we think that is

18   sufficient.

19             We believe it's sufficient, your Honor.

20             THE COURT:  Mr. Newman, do you believe it's

21   factually sufficient?

22             MR. NEWMAN:  I believe that it's factually

23   sufficient, your Honor.

24             THE COURT:  Let's turn to count two.

25             Could you tell me in your own words, Mr. Martino,

1  what you did in connection with the crime charged in count two

2  which -- first of all, before we go there, there is something

3  that I want to raise.  Mr. Newman.  I understand in connection

4  with count two, your client is waiving any claim of statute of

5  limitations?

6           MR. NEWMAN:  Yes, he is.

7           THE COURT:  You could raise an argument, Mr.

8  Martino, with respect to count two that the government waited

9  too long to charge you with this offense because this occurred

10 back in '93.  The government would have five years, I believe,

11 to bring this.

12          MR. FIRESTONE:  Correct, your Honor.

13          THE COURT:  Which would have been in 1998.

14          You could raise as a defense to this what we call

15 the statute of limitations which would preclude the government

16 from charging you with this offense at this time.

17          Do you understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Now, I've been given to understand both

20 in reading over your plea agreement and from your lawyer that

21 you are willing to waive that defense and to proceed to enter

22 a plea, in other words, to give up the claim of that statute

23 of limitations defense and plead guilty.  Is that correct?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  And Mr. Newman, this is something you've

1   discussed with your client?

2           MR. NEWMAN:  I have.

3           THE COURT:  And I take it that the decision to do

4   that was in a way a strategic decision that was worked out in

5   connection with the disposition of the case?

6           MR. NEWMAN:  And to further his interests.

7           THE COURT:  Do you want to tell me what you did in

8   connection with what is charged in that count.

9           THE DEFENDANT:  Yes, your Honor.

10          In 1992, I conspired with another to obtain through

11  the use of threatened economic harm property from Richard

12  Desmond in an amount greater than that which he had

13  fraudulently induced me to pay to his company in

14  furtherance --

15          THE COURT:  You are going to have to read that to me

16  again.  I missed the import of that.

17          THE DEFENDANT:  In 1992, I conspired with another to

18  obtain through the use of threatened economic harm, property

19  from Richard Desmond in an amount greater than that which he

20  had fraudulently induced me to pay his company.  In

21  furtherance of this agreement, I met with Desmond and

22  threatened him with -- in furtherance of this agreement, I met

23  with Desmond in London, England and threatened him with

24  economic harm should he or his company attempt to engage in

25  business in the United States.

**PLEA**                                                          37

1          THE COURT:  Have you done the research on this?  Is

2    economic harm sufficient to meet the elements that -- the

3    pattern jury instruction that I just read doesn't refer to

4    that.

5          MR. NEWMAN:  It absolutely is.  I've done it before

6    and economic harm is a basis of a Hobbs Act violation.

7          MR. FIRESTONE:  That is our position as well,

8    your Honor.  The statute specifically refers to -- defines

9    extortion as obtaining property through wrongful use of actual

10   or threatened force, violence or fear, and in this case the

11   fear that I believe Mr. Martino has allocuted he was

12   attempting to instill fear of economic harm in Mr. Desmond

13   should Mr. Desmond ever attempt to do business in the United

14   States again.

15          So it's our position that would be satisfactory.

16          THE COURT:  And what is the overt act that Mr.

17   Martino pled to?

18          MR. FIRESTONE:  He has already essentially allocuted

19   to overt act B which is the meeting in London at which he

20   threatened to damage Mr. Desmond's business if Desmond ever

21   attempted to do business again in the United States.

22          I believe that was his allocution.

23          MR. NEWMAN:  I think that he also satisfied it with

24   overt act A and B.

25          THE COURT:  What is the venue here?

PLEA                                                                  38

1          MR. FIRESTONE:  Pursuant to the plea agreement the

2    defendant has agreed to waive any challenge to venue on this

3    count.

4          I also understand, perhaps Mr. Martino will allocute

5    to this, in order to get to London, he traveled through the

6    Eastern District of New York.

7          At any rate, he has agreed to waive any venue

8    challenge on this.

9          MR. NEWMAN:  Mr. Firestone is right, in addition to

10   which some of the conversation may very well have taken place

11   that led to the conspiracy may have taken place in Long

12   Island.

13         THE COURT:  You indicated that you went to a meeting

14   in London where you threatened this individual with economic

15   harm, is that correct?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And did you fly out of Kennedy Airport

18   to go to that meeting?

19         THE DEFENDANT:  Yes, I did.

20         THE COURT:  Do you think we need to ask anything

21   further?

22         MR. FIRESTONE:  No, your Honor.

23         THE COURT:  Mr. Newman, do you think that the

24   allocution is sufficient for that count?

25         MR. NEWMAN:  Yes, I do, your Honor.

1          THE COURT:  What is the effect on interstate

2    commerce?

3          MR. FIRESTONE:  Your Honor, as I understand it, the

4    dispute between Mr. Martino and Mr. Desmond related to the

5    placement of certain advertisements in Mr. Desmond's

6    publication in England.  Mr. Desmond has specified he ran this

7    publishing business, Northern and Shell, and the effect on

8    interstate commerce was that if there was a threat of economic

9    harm to this business not to do business in the United States,

10   that obviously had an effect on interstate commerce.

11         THE COURT:  And Desmond was the person who was

12   threatened, Mr. Martino?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  And it was in connection with this

15   Northern and Shell business?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Based on the information given to me, I

18   find that the defendant is acting voluntarily and that he

19   fully understands the charges, his rights and the consequences

20   of his pleas and there are a factual basis for the pleas, so

21   I'll accept the pleas.

22         MR. NEWMAN:  Two other requests, if I might.

23         Number 1, that bail be continued.  Number 2, I think

24   with the consent of my colleagues to the right or at least

25   silence, I would ask that the bracelet be removed.  Any

PLEA                                                    40

1   situation that anybody had envisioned before has now been

2   overcome.

3           MR. FIRESTONE:  Your Honor, we don't oppose the

4   second application.  As the Court will remember, our

5   application for the bracelet was with the pending trial, Mr.

6   Martino might attempt to influence witnesses or jurors.  And

7   given the trial is no longer an issue, we don't oppose the

8   application.

9           MR. NEWMAN:  One other observation.  There was a

10  period of time where Mr. Martino faced more Draconian

11  penalties in the indictment here and in the Western District

12  of Missouri and he made every appears he was required to make.

13  And as your Honor knows, Pretrial Services at one time made an

14  application on their own to have him removed from the

15  necessity of reporting.

16          All I'm asking is that they remove the bracelet so

17  that he can return to a normal relationship with his children

18  and we don't have to bombard your Honor with applications.

19          THE CLERK:  Sentencing May 20 at 11:30.

20          MR. NEWMAN:  As I'm sure your Honor noticed from the

21  plea agreement, we have until the end of June to meet our

22  requirements insofar as the forfeiture is concerned.  We have

23  real property that must be sold.

24          Can I ask your Honor for two considerations.  May we

25  make the sentence convenient to your Honor some date after

PLEA                                                      41

1   June 30th so that we can at least be assured that we can meet

2   our responsibilities under the forfeiture?

3              THE COURT:  You know now you can't do that by that

4   time?

5              MR. NEWMAN:  I don't, and it's further complicated

6   by the need to go out and be sentenced in -- take a plea in --

7              THE COURT:  Why don't we just leave this as the date

8   and if there is a need to adjourn it.

9              THE CLERK:  Friday, May 20th at 11:30.

10             MR. NEWMAN:  Thank you, your Honor.

11             (Matter concluded.)

12

13

14        THIS IS TO CERTIFY THAT THE FOREGOING
          IS A TRUE AND ACCURATE TRANSCRIPTION
15        OF THE ORIGINAL STENOGRAPHIC NOTES.

16

17        _____

18           ALLAN R. SHERMAN, CSR, RPR
             Official Court Reporter

19

20

21

22

23

24

25

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York